**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN GUNSALUS,**

                          **Plaintiff,**

               **v.**

**CITY OF SYRACUSE, NY et al.,**

                        **Defendants.**
_____

**5:21-cv-1188**
**(GLS/ATB)**

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Bosman Law Firm, LLC | AJ BOSMAN, ESQ. |
| 3000 McConnellsville Road | ROBERT J. STRUM, ESQ. |
| Blossvale, NY 13308 | |
| **FOR THE DEFENDANTS:** | |
| Bond Schoeneck & King, PLLC | NICHOLAS P. JACOBSON, ESQ. |
| One Lincoln Center | |
| Syracuse, NY 13202 | STEPHANIE M. CAMPBELL, ESQ. |

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I.  Introduction

Plaintiff John Gunsalus commenced this action against defendants

City of Syracuse, Police Chief Kenton Buckner, First Deputy Chief Joseph

Cecile, Deputy Chief Richard Shoff, and unidentified Doe defendants pursuant to 42 U.S.C. § 1983 and Section 504 the Rehabilitation Act of 1973.[1]  (Compl., Dkt. No. 1.)  Now pending is defendants' motion to dismiss, (Dkt. No. 13), and Gunsalus' cross-motion for leave to amend, (Dkt. No. 18).  For the reasons that follow, Gunsalus' cross-motion is granted and defendants' motion to dismiss is granted in part and denied in part.

## II.  **Background**[2]

Gunsalus is a former employee of the City of Syracuse Police Department (SPD).  (Compl. ¶ 5.)  At all relevant times, Buckner served as the Chief of SPD, Cecile served as the First Deputy Chief, and Shoff served as the Deputy Chief.  (*Id.* ¶¶ 9-11.)  The Doe defendants "are individuals not yet known to" Gunsalus.  (*Id.* ¶ 12.)

In 2018, Gunsalus "was diagnosed with having a intervertebral disc disorder with radiculopathy in the lumbar region" as a result of an injury suffered in the line of duty, which "substantially limited his ability to care for

_____

[1]  *See* 29 U.S.C. §§ 791-94g.

[2]  Consistent with the standard of review, the facts are drawn from Gunsalus' complaint, and presented in the light most favorable to him.

himself, perform manual tasks, sleep, walk, stand, sit, reach, lift, bend, and work." (*Id.* ¶¶ 27, 29, 31.)  In April 2018, Gunsalus' healthcare provider deemed him "totally temporarily unable to work," and Gunsalus applied for, and was granted, "payment of his wages and physical therapy sessions under Section 207-c [of New York General Municipal Law] from April through November 2018" by the City.  (*Id.* ¶ 32.)

On November 29, 2018, Gunsalus was cleared by his healthcare provider for "light-duty [work] with accommodations," and prescribed continuing physical therapy.  (*Id.* ¶ 33.)  However, because of Gunsalus' pain, he was unable to perform light-duty work, and on January 10, 2019, was excused from all work by his healthcare provider.  (*Id.* ¶¶ 34-35.) Gunsalus was then prescribed additional physical therapy and "work hardening therapy . . . to improve his overall physical well-being and conditioning."  (*Id.* ¶¶ 35-36.)  During this period, and until June 28, 2019, Gunsalus continued to receive his wages, and his physical therapy sessions were covered by the City.  (*Id.* ¶ 37.)

Again, on June 28, 2019, Gonsalus was cleared by his healthcare provider for light-duty work, so long as he attended the "work hardening" physical therapy sessions three times per week.  (*Id.* ¶ 39.)  Accordingly,

Gonsalus returned to work for two days of light-duty and three days of physical therapy per week.  (*Id.* ¶ 40.)  During this period, and until November 2019, Gunsalus "received regular payment of his wages . . . , [his] physical therapy . . . [was] paid for," and he was "charged his earned leave . . . while attending physical therapy."  (*Id.* ¶ 41.)

Gonsalus was examined on October 21, 2019, by a new doctor, Dr. Daniel Carr, who "agreed with the diagnosis by [Gunsalus'] personal healthcare provider and approved of the [prescribed physical] therapy." (*Id.* ¶¶ 38, 43.)  However, in November 2019, "[d]efendants . . . refused to authorize further [physical] therapy . . . contrary to the requests and recommendations of [Gunsalus'] medical providers . . . [and] Dr. Carr."  (*Id.* ¶ 44.)  "Defendants refused to authorize such therapy based on [Gunsalus'] disability."  (*Id.* ¶ 44.)  "Due to the lack of continuing therapy, [Gonsalus'] doctor . . . advised him that he should no longer work at all." (*Id.* ¶ 45.)  Defendants also refused to approve Gunsalus' "prescribed . . . medical lift assist chair" because of their animus towards his disability, and his "prescribed nerve conduction testing."  (*Id.* ¶¶ 42, 45.)

On January 28, 2020, "[d]efendants notified [Gonsalus] . . . that his accrued leave credits were charged for the time he was not at work since

4

November 15, 2019 purportedly because [Gonsalus] had not attended his physical therapy, refused by [d]efendants, since that date." (*Id.* ¶ 46.)  In March 2020, Gunsalus had another scheduled medical examination with Dr. Carr, which Gunsalus requested to have postponed, due to the COVID-19 pandemic.  (*Id.* ¶ 47.)  Shoff agreed to adjourn the examination and notified Gunsalus that his previous request for work accommodations and "his recent request to be removed from work entirely . . . would be placed on hold as a result of the postponement."  (*Id.* (internal quotation marks omitted).)  Shoff also reiterated the fact that Gunalus' accrued leave would continue to be used during his absence from work "and falsely reported that [Gunsalus' physical therapy] program released him."  (*Id.* ¶ 48 (internal quotation marks omitted).)

After the adjournment, Gunsalus attended his examination with Dr. Carr, who again recommended the same physical therapy program as Gunsalus' medical provider.  (*Id.* ¶ 49.)  Despite Dr. Carr's recommendation, "[d]efendants continued to refuse to authorize . . . physical therapy for [Gunsalus] . . . [and u]pon information and belief, [d]efendants refused to authorize such therapy based [on Gunsalus'] disability."  (*Id.* ¶ 50.)

On August 12, 2020, Shoff informed Gunsalus by letter that, if he did not return to work he would be "carried on leave without pay," as he had exhausted all of his leave credits.  (*Id.* ¶ 52.)  Shoff stated in his letter that Gunsalus had been "released" from his physical therapy program and that Dr. Carr found Gunsalus "able to work a modified duty job."  (*Id.* ¶¶ 52-53.)  Shortly thereafter, Gunsalus responded to Shoff's letter, disputing the fact that he had been released from physical therapy.  (*Id.* ¶ 54.)  Then, Gunslaus reiterated his medical providers' advice that he remain on leave in a later email to Cecile and Shoff and demanded a hearing prior to the termination of his benefits.  (*Id.* ¶ 55.)

On September 3, 2020, Gunsalus' benefits were terminated and no hearing was afforded him.  (*Id.* ¶ 56)  Gunsalus then "filed a[ second] application for Section 207-c benefits based on a recurrence/exacerbation of his injury," which application was also denied.  (*Id.* ¶¶ 57, 59.)  Gunsalus objected to the denial of his application, and a hearing pursuant to an agreement between the City and the Syracuse Police Benevolent Association, Inc., (the "207-c Policy") was scheduled.  (*Id.* ¶¶ 60-62.)

On August 6, 2021, Gunsalus attended the hearing and "object[ed] to the proceeding."  (*Id.* ¶ 65.)  "The arbitrator stayed the hearing to allow

[Gunsalus] to bring the instant action," where he alleges due process violations against all defendants, and a violation of Section 504 of the Rehabilitation Act against the City.  (*Id.* ¶¶ 66-92.)

### III.  Standards of Review

#### A.    Rule 12(b)(6)

The standard of review under Rule 12(b)(6) of the Federal Rules of Civil Procedure is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

#### B.    Rule 15

Rule 15 of the Federal Rules of Civil Procedure provides that courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2).  Motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008); *see Monahan v. N.Y.C. Dep't of*

*Corr.*, 214 F.3d 275, 283 (2d Cir. 2000).  A proposed amendment would be futile, "when it could not withstand a motion to dismiss."  *F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017) (internal quotation marks and citation omitted).  The decision to grant or deny a motion to amend is committed to the sound discretion of the trial court, and the court's decision is not subject to review on appeal except for abuse of discretion.  *See Fielding v. Tollaksen*, 510 F.3d 175, 179 (2d Cir. 2007).

## IV.  Discussion

Defendants argue that, while Gunsalus seeks leave to amend "to remedy the deficiencies complained of by [d]efendants in their motion to dismiss," the proposed amended complaint fails to cure these deficiencies, and should be denied as futile.  (Dkt. No. 19 at 1-2 (quoting Dkt. No. 18, Attach. 1 ¶ 8).)  For the reasons discussed below, the proposed amendments do not cure the deficiencies in the complaint and are futile, other than with respect to Gunsalus' claim pursuant to Section 504 of the Rehabilitation Act insofar as it is premised on a theory of failure to accommodate.

### A.  Due Process

Defendants argue that amendment is futile because Gunsalus has

8

not alleged a due process violation because "he [was] provided notice and an opportunity to be heard before his 207-c disability payments were stopped, [and] he had an opportunity for a full adversarial hearing before [and after] his disability payments [were] terminated," but he failed to properly demand such hearings.  (*Id.* at 2-10.)  Additionally, defendants assert that Gunsalus has not alleged a deprivation of his property interest with respect to defendants' alleged failure to authorize his continued physical therapy.  (*Id.* at 9-13.)  Finally, defendants maintain that Gunsalus "cannot plausibly allege that the standard of review applicable under the 207-c Policy, which is the same standard applicable under [N.Y. C.P.L.R.] Article 78, resulted in the denial of due process . . . given that it is well-established that an Article 78 proceeding is a perfectly adequate post deprivation remedy."  (*Id.* at 14-15.)

Gunsalus argues that "he has plausibly alleged, in his proposed amended complaint, multiple instances where he was denied due process by [d]efendants," including a failure to provide Gunsalus with notice of his rights to challenge determination under the 207-c Policy and "[d]efendants' cessation of [his] 207-c benefits and exhaustion of [his] accru[ed leave credits]" without a hearing.  (Dkt. No. 18, Attach. 3 at 4, 6-9.)  Additionally,

Gunslaus asserts that he "is challenging the 207-c Policy's provisions as constitutionally inadequate." (*Id.* at 10-11.)

Analysis of a procedural due process claim is two-pronged. *See Narumanchi v. Bd. of Trs. of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988). First, the court must discern "whether the plaintiff has a property or liberty interest protected by the Constitution." *Id.* (citation omitted). If such an interest exists, "[the] court must then consider whether the government deprived the plaintiff of that interest without due process." *Id.*

With respect to the first prong of this analysis, "[t]he right of a disabled public employee to receive disability payments under [New York General Municipal Law] § 207-c constitutes a property interest giving rise to procedural due process protection, under the Fourteenth Amendment, before those benefits are terminated." *Albertelli v. Monroe County*, No. 09-CV-6039, 2012 WL 1883355, at *10 (W.D.N.Y. May 22, 2012) (internal quotation marks and citation omitted).

Regarding the second prong, "whether constitutionally adequate procedures were used to undertake the constitutionally-cognizable deprivation, it is settled that prior to such a deprivation, the state must use procedures that appropriately balance the interests involved in the

10

deprivation." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 52 (2d Cir. 2018).  The Second Circuit has "held on several occasions that there is no due process violation where . . . pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement." *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008) (collecting cases). "Pre-deprivation processes need not be elaborate, and the Constitution mandates only that such process include, at a minimum, notice and the opportunity to respond."  *Kane v. de Blasio*, Nos. 21 Civ. 7863, 21 Civ. 8773, 2022 WL 3701183, at *12 (S.D.N.Y. Aug. 26, 2022) (citation omitted); *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of . . . property be preceded by notice and opportunity for hearing appropriate to the nature of the case." (internal quotation marks and citation omitted)).

Here, the proposed amended complaint demonstrates that Gunsalus received constitutionally-adequate process prior to the termination of his 207-c disability payments on September 3, 2020. (Prop. Am. Compl. ¶ 63, Dkt. No. 18, Attach. 2.)  Gunsalus received notice of the pending termination of his benefits and the grounds for such action via Shoff's

August 12, 2020 letter. (*Id.* ¶¶ 59-60.)  Shortly thereafter, Gunsalus

responded to Shoff's letter, and disputed the grounds for which his benefits

were to be terminated. (*Id.* ¶ 61.)  Gunslaus disputed these grounds again

in his September 2, 2020 email to Cecile and Shoff. (*Id.* ¶ 62.)  These

facts, as alleged in the proposed amended complaint, demonstrate that,

despite the fact that Gunsalus was not afforded a pre-termination hearing,

he received adequate notice of the pending recision of his 207-c benefits,

and had a meaningful opportunity to be heard on the issue. *See Rabbit v.*

*Village of Greenwood Lake*, No. 11 CV 7582, 2012 WL 1871663, at *2,*4

(S.D.N.Y. Mar. 29, 2012) (finding that, where "plaintiff[] claim[ed] that the

withholding of health insurance benefits while he was on Section 207-c

leave was done without appropriate due process of law," that the lack of

"an in-person hearing ha[d] no bearing on whether his rights were violated,"

because "[a]s required, plaintiff was heard at a meaningful time and in a

meaningful manner through his correspondence with the" defendants

(internal quotation marks and citation omitted)); *see also Zembiec v.*

*County of Monroe*, 766 F. Supp. 2d 484, 497 (W.D.N.Y. 2011) (finding no

due process violation with respect to denial of 207-c benefits where "[i]t

appears that plaintiff had grievance procedures available to him to

challenge that denial").

Additionally, with respect to the termination of his 207-c benefits, Gunsalus could have proceeded with a hearing under the 207-c Policy, as he did when his second application for benefits was denied, (Prop. Am. Compl. ¶ 70), or an Article 78 hearing, which has been held in the context of 207-c benefits to be "an adequate post-deprivation remedy." *Horne v. Buffalo Police Benev. Ass'n, Inc.*, 2010 WL 2178813, at *7 (W.D.N.Y. May 28, 2010); *see Massi v. Flynn*, 353 F. App'x 658, 659 (2d Cir. 2009); *see also Rabbit*, 2012 WL 1871663, at *4; *Zembiec*, 766 F. Supp. 2d at 497.

Finally, to the extent Gunsalus premises his due process claim on the fact that "his accrued leave credits were charged for the time he was not at work since November 15, 2019 . . . instead of [his] 207-c coverage," the discontinuance of his physical therapy, the standard of review and procedures applied at his stayed 207-c Policy hearing, or "failing to notify [Gunsalus] of determinations, his rights to challenge 207-c determinations, or the '207-c' [P]olicy/procedure," (Prop. Am. Compl. ¶¶ 50 52, 66, 68, 72-73, 77), amendment would be futile.  Regarding the denial of Gunsalus' physical therapy and the application of his accrued leave credits, in both cases, Gunsalus does not have a constitutionally-protected property

interest.  *See Zembiec*, 766 F. Supp. 2d at 497 ("'As long as [an] employee is receiving a paycheck equivalent to his normal salary, that the employee is drawing down his sick leave is a bookkeeping entry with no pecuniary effect,' and thus he is not deprived of any property right." (quoting *O'Connor v. Pierson*, 426 F.3d 187, 200 (2d Cir. 2005)); *see also Albertelli*, 2012 WL 1883355, at *10 ("The right of a disabled public employee to receive *disability payments* under [New York General Municipal Law] § 207-c constitutes a property interest giving rise to procedural due process protection." (internal quotation marks and citation omitted; emphasis added)).  Gunsalus' challenge to the standard of review and procedures used in a 207-c Policy hearing—the same "standard of review under Article 78 of the New York Civil Practice Law and Rules," (Prop. Am. Compl. ¶ 72)—is also without merit.  *See Hellenic Am. Neighborhood Action Comm. v. City of  New York*, 101 F.3d 877, 881 (2d Cir. 1996) ("We have held on numerous occasions that an Article 78 proceeding is a perfectly adequate postdeprivation remedy").  Finally, Gunslaus' allegation that defendants "fail[ed] to notify [him] of [their] determinations, his rights to challenge 207-c determinations, or the '207-c' [P]olicy/procedure," (Prop. Am. Compl. ¶ 77), does not appear to be fully accurate based on other allegations in

14

the proposed amended complaint, (Prop. Am. Compl. ¶ 45 (alleging that

Gunsalus learned of the existence of the "'207 procedure' or [P]olicy" on

July 3, 2019)).  Additionally, regardless of his alleged lack of knowledge of

the 207-c Policy, and to the extent such lack of knowledge is attributable to

defendants, because, as mentioned above, Gunslaus received adequate

constitutional due process, (Prop. Am. Compl. ¶¶ 42-43, 59-62),

amendment would be futile.

Because amendment would be futile with respect to Gunsalus' due

process claim, Gunsalus' motion to amend is denied to the extent it sought

to amend that claim.  Accordingly, and for the same reasons discussed

above regarding futility, defendants' motion to dismiss is granted with

respect to Gunsalus' due process claim.

## B.    **Rehabilitation Act**

Gunsalus brings a claim pursuant to Section 504 of the Rehabilitation

Act against the City, premised on the theories of disparate impact,

disparate treatment, and failure to accommodate.  (Dkt. No. 18, Attach. 3

at 13.)  Defendants maintain, among other arguments, that amendment is

futile because Gunsalus has not provided a non-disabled comparator to

support his claim for disparate treatment, "has not plausibly alleged facts

15

sufficient to support . . . the existence of any statistical evidence that would render [a disparate impact] claim plausible," and only "challeng[es] the level of [accommodative] services provided to him . . . [but] has not plausibly alleged that he was denied a reasonable accommodation." (*Id.* at 16-19.)

Gunsalus maintains that he "was treated less favorably than non-disabled officers" also receiving 207-c benefits, "[t]he City's practices with respect to the administration of 207-c [benefits] have a disparate impact on disabled officers," and that he was denied reasonable accommodations. (Dkt. No. 18, Attach. 3 at 11-15.)

In order to assert a violation of Section 504 of the Rehabilitation Act, a plaintiff must allege that (1) "he is a qualified individual with a disability"; (2) "[the defendant] is an entity subject to the act[]"; and (3) "he was denied the opportunity to participate in or benefit from [the defendant's] services, programs, or activities or [the defendant] otherwise discriminated against him by reason of his disability." *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (citation omitted). "Exclusion or discrimination may take the form of disparate treatment, disparate impact, or failure to make a reasonable accommodation." *B.C. v. Mount Vernon Sch. Dist.*,

837 F.3d 152, 158 (2d Cir. 2016) (citation omitted).

"Where a plaintiff is relying on [disparate] treatment to establish an inference of discrimination, the plaintiff bears the burden of demonstrating that a putative comparator is similarly situated in all material respects." *Pierre v. Napolitano*, 958 F. Supp. 2d 461, 478 (S.D.N.Y. July 24, 2013) (citing *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). "On a motion to dismiss, a court must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Doe v. Columbia Univ.*, 20-cv-06770, 2021 WL 3292591, at *27 (S.D.N.Y. Aug. 1, 2021) (internal quotation marks and citation omitted).

"To establish a prima facie case under a disparate impact theory, plaintiff must demonstrate (1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Mount Vernon Sch. Dist.*, 837 F.3d at 158 (internal quotation marks and citation omitted). "[P]laintiffs are ordinarily required to include statistical evidence to show disparity in outcome between groups." *Id.* (citation omitted); *see Mandala v. NTT Data, Inc.*, 975 F. 3d 202, 209

17

(2d Cir. 2020) ("To nudge a disparate impact claim across the line from

conceivable to plausible—and, indeed, to ultimately prove such a

claim—plaintiffs typically rely on statistical evidence to show a disparity in

outcome between groups.")

Finally, to establish a prima facie case of discrimination under

Section 504 of the Rehabilitation Act based on failure to accommodate:

> [A] plaintiff must demonstrate that (1) the plaintiff is a
> person with a disability under the meaning of the
> statute in question; (2) an employer covered by the
> statute had notice of his disability; (3) with reasonable
> accommodation, plaintiff could perform the essential
> functions of the job at issue; and (4) the employer has
> refused to make such accommodations.

*Costabile v. N.Y.C. Health & Hosp. Corp.*, 951 F.3d 77 (2d Cir. 2020)

(internal quotation marks omitted).

To the extent Gunsalus premises his claim on a theory of disparate

treatment, amendment would be futile.  The proposed amended complaint

posits only conclusory allegations of discriminatory treatment, (*see e.g.*,

Prop. Am. Compl. ¶ 100), and wholly fails to allege a similarly situated

comparator—or any comparator at all—to support a theory of disparate

treatment.  *See Brown v. N.Y.C. Dep't of Educ.*, No. 20-CV-2424, 2021 WL

4943490, at *10 (S.D.N.Y. Aug. 31, 2021) (dismissing disability

18

discrimination claim under Section 504 of the Rehabilitation Act where

"[p]laintiff ma[d]e[] vague reference to non-disabled individuals, [but] . . .

fail[ed] to identify any comparators whose treatment by [d]efendant would

support an inference of disability discrimination." (collecting cases holding

the same)).

Insofar as Gunsalus' claim is premised on a theory of disparate

impact, amendment would also be futile.  While Gunsalus alleges in his

proposed amended complaint that the City took several actions in order to

carry out its "unlawful policy of depriving disabled police officers of their

[207-c benefits] necessitated by reason of an on-duty injury," and further

alleges that the policy "ha[s] a greater or disparate impact on . . . disabled

officers," (Prop. Am. Compl. ¶¶ 102-03), Gunsalus provides no statistical or

even anecdotal support for such conclusory allegations.  *See Mandala*,

975 F. 3d at 209-10 (stating that, while the standard requiring statistical

evidence "is relaxed at the pleading stage . . . even at this early juncture,

the statistics must plausibly suggest that the challenged practice actually

has a disparate impact." (citations omitted)); *see also Schoengood v.*

*Hofgur LLC*, No. 20-CV-2022, 2021 WL 1906501, at * 4 (E.D.N.Y. May 12,

2021) ("Because the complaint contains little to no facts rendering

19

plausible plaintiffs' conclusory claim of a neutral policy that has a disparate impact on a protected group, plaintiffs' disparate impact claims under the . . . R[ehabilitation] A[ct] against defendants are dismissed."); *Zahran ex rel. Zahran v. N.Y. Dep't of Educ.*, 306 F. Supp. 2d 204, 212 (N.D.N.Y Feb. 10, 2004) (noting, where "[n]o allegations whatsoever ha[d] been offered, neither in the form of statistical nor anecdotal evidence, as support for the alleged disparate impact" that "[e]ven at the liberal pleading phase of the litigation, [such] bare, conclusory allegation cannot suffice.").

Finally, defendants' argument that, "[i]n support of his reasonable accommodation claim, [Gunsalus] does not allege that he was denied traditional workplace accommodations but, rather, asserts that he was not provided with all of the 207-c benefits to which he was entitled," (Dkt. No. 19 at 18-19), is without merit, as the proposed amended complaint alleges that the City "refus[ed] to authorize [Gunsalus'] . . . necessary habilitative devices," (Prop. Am. Compl. ¶ 101; *see id.* ¶¶ 48, 51), not that he was denied reimbursement or coverage for under the 207-c Policy for such devises. Accordingly, Gunsalus' cross-motion for leave to amend is granted with respect to his claim pursuant to Section 504 of the Rehabilitation Act only insofar as it is premised on a theory of failure to

accommodate, and the motion to dismiss is denied with respect to such claim.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Gunsalus' cross-motion for leave to amend (Dkt. No. 18), is **GRANTED** to the extent that it seeks to amend his claim pursuant to Section 504 of the Rehabilitation Act premised on a theory of failure to accommodate, and is **DENIED** in all other respects; and it is further

**ORDERED** that defendant's motion to dismiss, (Dkt. No. 13) is **GRANTED IN PART and DENIED IN PART** as follows:

> **DENIED** as to Gunsalus' claim pursuant to Section 504 of the Rehabilitation Act only insofar as it is premised on a theory of failure to accommodate; and

> **GRANTED** in all other respects; and it is further

**ORDERED** that Buckner, Cecile, and Shoff are **DISMISSED** from this action; and it is further

**ORDERED** that Gunsalus shall file the amended complaint in accordance with Local Rule 15.1(c) and this Memorandum-Decision and

Order; and it is further

      **ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

November 15, 2022
Albany, New York

Gary L. Sharpe
U.S. District Judge