**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN GUNSALUS,**

                      **Plaintiff,**         **5:21-cv-1188**
                                          **(GLS/ATB)**

                      **v.**

**CITY OF SYRACUSE, NY et al.,**

                      **Defendants.**
_____

## SUMMARY ORDER

Plaintiff John Gunsalus commenced this action against defendants City of Syracuse, Police Chief Kenton Buckner, First Deputy Chief Joseph Cecile, Deputy Chief Richard Shoff, and unidentified Doe defendants,[1] alleging a due process violation pursuant to 42 U.S.C. § 1983 and disability discrimination pursuant to Section 504 the Rehabilitation Act of 1973.[2] (Compl., Dkt. No. 1.) Thereafter, defendants moved to dismiss the complaint, (Dkt. No. 13), and Gunsalus cross-moved to amend the complaint, (Dkt. No. 18). The court found that amendment would be futile with respect to both Gunsalus's due process claim and his disability

---

    [1] Buckner, Cecile, and Shoff have since been dismissed from the action. (Dkt. No. 20 at 21.)

    [2] *See* 29 U.S.C. §§ 791-94g.

discrimination claim insofar as it was premised on the theories of disparate impact and treatment, and, accordingly, partially granted defendants' motion to dismiss. (Dkt. No. 20 at 21.) The court denied defendants' motion to dismiss as to Gunsalus's disability discrimination claim premised on the theory of failure to accommodate, and granted Gunsalus's motion to amend as it related to that claim and theory only. (*Id.*) Gunsalus did not file the proposed amended complaint as directed, and, instead, moved for reconsideration and for leave to amend. (Dkt. No. 21.) Also pending is Gunsalus's letter motion seeking to file a reply in connection with the aforementioned motion. (Dkt. No. 25.) For the following reasons, Gunsalus's motion seeking leave to file a reply brief is granted, and his motion for reconsideration and for leave to amend the complaint is denied.

Familiarity with the underlying facts is presumed and, therefore, the facts will be repeated only as relevant. For a full recitation of those facts, the parties are referred to the court's November 15, 2022 Memorandum-Decision and Order. (Dkt. No. 20 at 2-7.)

Motions for reconsideration proceed in the Northern District of New

York under Local Rule 60.1 (formerly Rule 7.1(g)).[3] "In order to prevail on a motion for reconsideration, the movant must satisfy stringent requirements." *In re C-TC 9th Ave. P'ship v. Norton Co.*, 182 B.R. 1, 2 (N.D.N.Y. 1995). Such motions "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). The prevailing rule "recognizes only three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear

---

[3] Northern District of New York Local Rule 60.1 provides:

> Unless otherwise provided by the Court, by statute or rule . . . , a party may file and serve a motion for reconsideration or reargument no later than **FOURTEEN DAYS** after the entry of the challenged judgment, order, or decree. All motions for reconsideration shall conform with the requirements set forth in L.R. 7.1(a)(1) and (2). The briefing schedule and return date applicable to motions for reconsideration shall conform to L.R. 7.1(a). . . . The Court will decide motions for reconsideration or reargument on submission of the papers, without oral argument, unless the Court directs otherwise.

3

error of law or prevent manifest injustice." *In re C-TC 9th Ave. P'ship*, 182 B.R. at 3 (citation omitted). "[A] motion to reconsider should not be granted where the moving party seeks solely to re[-]litigate an issue already decided." *Shrader*, 70 F.3d at 257.

As a preliminary matter, Gunsalus's motion seeking leave to file a reply brief in connection with his motion for reconsideration and for leave to amend, (Dkt. No. 25), is granted. Gunsalus argues that reconsideration is appropriate because the court committed clear error in granting defendants' motion to dismiss as it related to Gunsalus's due process claim because "[d]efendants' motion to dismiss did not challenge [Gunsalus]'s contention that the . . . 207-c policy is violative of officers' due process rights," and "[w]here a due process violation is based on an established procedure rather than a random, unauthorized act, the availability of additional process in an Article 78 proceeding does not bar a due process claim." (Dkt. No. 21, Attach. 3 at 2, 4 (citaiton omitted).) Defendants assert that Gunsalus's motion is an improper attempt to relitigate "precisely the same argument" advanced "in his opposition to [d]efendants' motion to dismiss." (Dkt. No. 24 at 6.) Defendants further maintain that the court did not commit clear legal error with respect to

4

Gunsalus's due process claim because, while it is true that "[i]n circumstances where the deprivation occurs in accordance with an institutional policy, due process requires notice of the termination of benefits and the opportunity to be heard," the court's order "properly found that . . . [Gunsalus] received constitutionally adequate process prior to the termination of his 207-c disability payments."  (*Id.* at 7, 9 (citation omitted).)

The court assumes, without deciding, that Gunslaus's contentions are properly brought as a motion for reconsideration, and will turn to the merits of his argument.  As stated in the court's November 15, 2022 Memorandum-Decision and Order, analysis of a procedural due process claim is two-pronged.  *See Narumanchi v. Bd. of Trs. of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988).  First, the court must discern "whether the plaintiff has a property or liberty interest protected by the Constitution."  *Id.* (citation omitted).  If such an interest exists, "[the] court must then consider whether the government deprived the plaintiff of that interest without due process."  *Id.*

With respect to the first prong of this analysis, "[t]he right of a disabled public employee to receive disability payments under [New York General Municipal Law] § 207-c constitutes a property interest giving rise

5

to procedural due process protection, under the Fourteenth Amendment, before those benefits are terminated." *Albertelli v. Monroe County*, No. 09-CV-6039, 2012 WL 1883355, at *10 (W.D.N.Y. May 22, 2012) (internal quotation marks and citation omitted).

Regarding the second prong, "whether constitutionally adequate procedures were used to undertake the constitutionally-cognizable deprivation, it is settled that prior to such a deprivation, the state must use procedures that appropriately balance the interests involved in the deprivation." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 52 (2d Cir. 2018). The Second Circuit has "held on several occasions that there is no due process violation where . . . pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement." *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008) (collecting cases). "Pre-deprivation processes need not be elaborate, and the Constitution mandates only that such process include, at a minimum, notice and the opportunity to respond." *Kane v. de Blasio*, Nos. 21 Civ. 7863, 21 Civ. 8773, 2022 WL 3701183, at *12 (S.D.N.Y. Aug. 26, 2022) (citation omitted); *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542

6

(1985) ("An essential principle of due process is that a deprivation of . . . property be preceded by notice and opportunity for hearing appropriate to the nature of the case." (internal quotation marks and citation omitted)).

Additionally, Gunsalus is correct in noting that there is a distinction between "deprivations of liberty or property occurring as a result of established governmental procedures, and those based on random, unauthorized acts by government officers." *Locurto v. Safir*, 264 F.3d 154, 172 (2d Cir. 2001) (citation omitted).  "In the former case, the government may have to provide a pre-deprivation hearing because it can predict when the deprivation of a liberty or property interest will occur." *Vaher v. Town of Orangetown, N.Y.,* 133 F. Supp. 3d 574, 604 (S.D.N.Y. 2015) (citation omitted).  However, "when the deprivation is the result of random or unauthorized acts, defendants will satisfy procedural due process so long as [they] provide[ a] meaningful post-deprivation remedy." *Id.* (citation omitted).

The proposed amended complaint does not clearly indicate whether the alleged depravation in this case resulted from established governmental procedures or was the result of random or unauthorized acts.  (*See generally* Prop. Am. Compl., Dkt. No. 18, Attach. 2.)  However,

7

even assuming that the depravation resulted from established governmental procedures,[4] because the court's November 15, 2022 Memorandum-Decision and Order affirmed that Gunsalus "received notice of the pending termination of his benefits" and that he responded to the letter providing him notice and disputed the termination of his benefits shortly thereafter, the court did not err in concluding that Gunsalus "received adequate notice of the pending rescission of his 207-c benefits, and had a meaningful opportunity to be heard on the issue." (Dkt. No. 20 at 11-12.) Thus, the court properly held that, regardless of whether the alleged deprivation occurred due to an established policy or unauthorized act that Gunsalus "received constitutionally adequate process prior to the termination of his 207-c disability payments," *and* that Gunsalus had available post-depravation remedies available to him by way of a hearing under the 207-c Policy or an Article 78 hearing. (*Id.* at 12-13 (citation

---

[4] It is worth noting that the proposed amended complaint includes allegations indicating the alleged depravation was the result of random or unauthorized acts, and not established governmental procedures. (*See* Prop. Am. Compl. ¶¶ 59, 60, 64 (alleging that "[d]efendant Shoff sent [Gunsalus] a letter, . . . requir[ing him] to report to work" after "falsely advised Dr. Carr that [Gunsalus] no longer needed or was 'released' from" his therapy program" and that Gunsalus's failure to do ultimately lead to the recision of his benefits.)

8

omitted).) Accordingly, the court did not commit clear legal error in dismissing Gunsalus's due process claim on this ground. *See Rabbit v. Village of Greenwood Lake*, No. 11 CV 7582, 2012 WL 1871663, at *3-4 (S.D.N.Y. Mar. 29, 2012) (finding that the alleged depravation of health insurance benefits was "based on an institutional policy," rather than "a 'random and unauthorized' decision by an individual," thus triggering the need for some level of pre-depravation remedy, and, that plaintiff's "due process rights to pre-deprivation notice and an opportunity to be heard were satisfied by the letters exchanged by plaintiff . . . and the [defendant] . . . , and, additionally noting that "the availability of an Article 78 proceeding . . . constitute[d] a sufficient post-deprivation remedy" (citations omitted)).

Additionally, Gunsalsus's argument that the "[d]efendants' motion to dismiss did not challenge [Gunsalus]'s contention that the . . . 207-c policy is violative of officers' due process rights," (Dkt. No. 21, Attach. 3 at 2), is without merit. (Dkt. No. 13, Attach. 4 at 5-7 (stating that Gunsalus "further alleges that the 207-c Policy violates his right to due process," outlining the adequacy of the procedures provided for under the "207-c Policy negotiated and entered into by and between the City and" plaintiff's union, describing how the procedures were complied with by defendants, and,

9

finally, noting how Gunsalus failed to avail himself of opportunity to challenge or appeal the determination made by defendants' regarding the revocation of his 207-c benefits).

Gunsalus's motion also seeks to amend his Rehabilitation Act claim to the extent it was premised on a theory of disparate impact or treatment. (Dkt. No. 21, Attach. 3 at 15-19.)  In support of his position, Gunsalus argues that his revised, proposed amended complaint, (*id.*, Attach. 2), cures the deficiencies pointed out in defendants' motion to dismiss, which the court granted.  (Dkt. No. 21, Attach. 3 at 15-19.)  Defendants, who, understandably, appear to be treating Gunsalus's motion as one seeking reconsideration,[5] contend that Gunsalus's motion to amend fails to satisfy the requirements for a motion for reconsideration and is simply an impermissible attempt to get a "second bite at the apple," and, nonetheless, that Gunsalsus "has failed to meet the pleading requirements

---

[5] Gunsalus's reply brief makes it clear that he is seeking reconsideration only as to his due process claim, (Dkt. No. 25, Attach. 1), however, because Gunsalus is seeking to amend a claim that was dismissed with prejudice, the court construes the motion as one seeking reconsideration.  *See N.Y. ex rel. Khurana v. Spherion Corp.*, No. 15 Civ. 6605, 2019 WL 1274710, at *2 (S.D.N.Y. March 20, 2019) (construing "party's motion for leave to amend a claim that ha[d] been dismissed with prejudice as a motion for reconsideration" and collecting cases doing the same).

10

for either a disparate impact or disparate treatment claim under Section 504 of the Rehabilitation Act." (Dkt. No. 24 at 11, 14.)

Defendants are correct. Gunsalus's motion makes no attempt to argue that there has been an intervening change in controlling law, that new evidence not previously available to him has become available, or the need to correct a clear error of law or prevent manifest injustice, (Dkt. No. 21), and, thus, the motion is denied.

Accordingly, it is hereby

**ORDERED** that Gunsalus's letter motion requesting leave to file a reply (Dkt. No. 25) is **GRANTED**; and it is further

**ORDERED** that Gunsalus's motion for reconsideration and for leave to amend (Dkt. No. 21) is **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Summary Order to the parties.

**IT IS SO ORDERED.**

March 7, 2023
Albany, New York

Gary L. Sharpe
U.S. District Judge

11